This is our second case of the morning in re the Marriage of Wells for the appellant Dawn Wall and for the appellate Helen Ogar. And you may proceed. Oh this is 416-0055. My name is Dawn Wall and I am here on behalf of Jeff Wells. We are here today on appeal from a decision of the trial court entered in December of 2015. In that particular decision, issues were discussed with respect to a mandate and a remand order that was issued by this court in April of 2015. This court heard a prior appeal between the parties and made a determination that actually there was an abuse of discretion by the trial court in failing to determine a downward deviation. And so this court issued a mandate in order for the trial court to make a determination on a downward deviation. We appeared before the trial court in September of 2015. We addressed the issues with the trial court. The trial court then scheduled a hearing in this case in November of 2015. When we met with the trial court in September of 2015, counsel for Ms. Wells had indicated that she wanted the opportunity to put on further evidence with respect to the downward deviation. I objected to that and indicated to the trial court that the record on the downward deviation had been closed. That in June of 2012, the parties had offered testimony, had offered exhibits, and then a decision was made by the court in August of 2012 based on that evidence. That was the decision that we had appealed to your honors that was heard in 2015 and a decision was rendered. And in this court's appellate decision, very specific findings were made with respect to the evidence that had been introduced by the parties in June of 2012. This court also noted in its appellate opinion that the needs of the three minor children in this case were met and that there was no evidence presented in June of 2012 that any of the children's needs were not being met. This court noted that Carol was paying for her children, and this court also specifically noted that Ms. Wells' domestic partner was paying at least half of the living expenses for that family. This court in its appellate opinion and the remand order back to the trial court acknowledged those things. However, despite that and despite the fact that the trial court recognized that its job was to follow the mandate of this court and determine a downward deviation, the trial court said, I'm going to reopen the evidence. One of the arguments that the petitioner made at the time that we were back on remand in front of the trial court was that the petitioner was surprised or Ms. Wells was surprised about this downward deviation issue because we had only talked about it in the June proceeding and prior to the court's issuance of its August 2012 order. But this court very specifically found in its appellate opinion that in fact that issue was raised. In closing argument, I spoke about the downward deviation. We argued that the $900 set off was a downward deviation. Ms. Wells argued it was maintenance. But this the petitioner in this case, Ms. Wells, should not have been allowed to take a second bite at the apple and introduce additional evidence on that issue. If we would assert to your honors that in the event that this court makes a specific mandate, and I would argue in this case that it was a specific mandate, that only in extraordinary circumstances would there be an opportunity for the evidence to be reopened. There were no extraordinary circumstances even asserted here. And Ms. Wells had previously been able to testify about all of the expenditures of the children and her income. In tandem with the trial court considering this issue of downward deviation, Ms. Wells also filed in September of 2015 a petition, a third petition to modify the support, asserting that she had experienced a substantial change in circumstance. The two bases of that being that Mr. Wells' income had increased and the needs of the children had increased. The trial court did allow additional evidence on that petition and certainly we responded with tax returns and some other information that updated the financial situation of the respective parties. The trial court took the downward deviation remand issue and the issue of Ms. Wells' third petition to modify under advisement and then issued its determination in December of 2015. We would assert to your honors that the trial court abused its discretion in first allowing additional evidence at a hearing on the downward deviation issue and then also abused its discretion in setting the downward deviation at 25% when the statutory guideline would have been 32%. We also assert to your honors that the trial court did issue a decision that was against the manifest weight of the evidence with respect to the petitioner's assertion that there was a substantial change in circumstance. It has been admitted, it has been determined by this court and also recognized by the trial court in the December 2015 order that there is a significant disparity between the income earning capacity of both of the parties in this case. If this court looks back to the judgment of dissolution date in 2007, Mr. Wells was making $233,000. So almost four times what Mr. Wells was making when the judgment of dissolution was entered. And at that time the parties by agreement agreed Ms. Wells would pay all of the extracurricular expenditures of the children, would pay all the child care expenses of the children and that Mr. Wells would receive a downward deviation. Now in the judgment of dissolution, Mr. Wells was given a specific dollar amount of a downward deviation. He was given a $900 downward deviation. This appellate court decided in April of 2015 that that downward deviation of $900 was only automatic through September of 2012, which would have been the five year period. However, the court in its appellate decision did say further deviation should always be considered in the future. And I would argue to your honors that we have to look at the math from 2007 and compare it to the numbers that the trial court had before it in 2015 in determining whether or not the downward deviation by the trial court was an abuse of discretion. Mr. Wells was allowed to pay child support of $400 a month in 2007. His actual child support obligation under the statutory guidelines would have been $1,300. So he received about a 20% deviation. He was paying at about 11.5% of his net income in 2007 and that's when the parties income was that Ms. Wells was making $70,000. When the evidence was presented that drove the downward deviation issue, Mr. Wells was making $70,000. And Ms. Wells in 2011 testified that she had her best year and she made over $430,000. So at the time of that June 2012 hearing, even her year to June 2012 hearing, Ms. Wells was making $430,000. And yet the trial court making its determination on a downward deviation given the disparity of income at that point says that Mr. Wells should only get a 7% deviation. I would assert to your honors that the appropriate deviation for Mr. Wells that the trial court should have determined based on the evidence that were about half of what the statutory guideline would have been. Instead the trial court makes a decision that will reduce it by 7% with really nothing material in the determination by the trial judge that that was an appropriate downward deviation. Certainly this court recognized its role in setting a downward deviation and indicated in its 2015 opinion, we make these factual findings, which I would assert were kind of findings of the case. But we're going to remand that issue of downward deviation to the trial court because it is the trial court's responsibility to set out and determine the actual deviation. However, we're back before your honors because I would assert that in this instance the trial court did have been about half of the statutory guideline and that should have been in place for the period from September of 2012 when the five year period recognized in the judgment of dissolution expired and then up to September 2nd of 2015 when Ms. Wells filed her third petition to modify. I would further assert that the trial court's determination in December of 2015 finding a substantial change of circumstance is not supported by the evidence. And I would assert it's actually against the manifest weight of the evidence. We would argue that a different result, a contrary result, would clearly be appropriate in this instance given the evidence that the trial court considered in November of 2015. Ms. Wells testified in that case. Historically, she had made six figures every year with IBM and certainly I recognized and the trial court recognized that she had terrific earning capacity. But she made a decision because of some issues in the marketplace with IBM that she was going to leave that job. She left that position to go to Ernst and Young and she testified that instead of a commission based income, she was now going to earn a guaranteed salary of $250,000. She asserted that that change in employment was factually important, but that really the basis of the petition to modify the third time was because respondent's income had increased and the needs of the children had increased. Respondent's income increased, Your Honors, about $4,500 in a net number. Counsel in her brief argues that that was the gross number was $98,000, but in every other instance the trial court dealt with net. And so Mr. Wells essentially went from $70,000 net in 2012 to a net of about $75,000 in 2015. Ms. Wells went from $178,000 in 2014, which she testified was one of her lower years, to $250,000. Also, she presented evidence that the expenses of the children had increased by $6,000 annually. She testified that she had purchased a new vehicle for her son and certainly the trial court said, you know, we could all quarrel with whether or not that's a need for a 16-year-old versus a convenience for a 16-year-old. I don't think we even have to go that far in terms of weighing the manifest weight issue, because in this instance the original judgment of dissolution was a decision negotiated between the parties where Carol Wells agreed, despite what the expenses of the children were going to be, she was going to meet those at 100%. And she didn't ask in her petition to modify, filed in September of 2015, for that provision of the judgment order to be changed. So I think it's a red herring, frankly, in terms of the decision issued in this case on substantial change of circumstance, that she asserts that the child expenses increased by $6,000. I would also point out to this court that, frankly, the testimony that she gave in June of 2012 regarding the expenses locked it in that those expenses were $30,000. And then when the judge allowed retestimony on those same deviation issues in 2015, she said, well, actually those expenses were greater than I said in 2012, and they're actually $36,000. There was no evidence presented, either in June of 2012 or in November of 2015, that any needs of these minor children were unmet. I would assert to Your Honor that under the guidelines, the statutory guidelines for setting child support, each of the factors weighs in favor of a reduction and a downward deviation in the support set for Mr. Wells. And I would assert that Ms. Wells met her obligation to prove a substantial change are not supported. And on that basis, I would ask that this court reverse the decision of the trial court and remand the issues to the trial court an additional time with a specific mandate that orders the trial judge to create a downward deviation for that period from September 2nd of 2012 to the present. Thank you. Thank you, counsel. We'll hear from you on rebuttal. Good morning, counsel. I am Helen Ogar. I am here for my client, Carol Wells. She's now known as Carol Snyder. With regard to this case, I just want to point out that since September of 2012, I've been trying to get an increase in child support. Counsel indicated this is our second appeal. I would indicate to this panel that this is our fourth appeal on this issue. Granted, two of those appeals were dismissed for lack of jurisdiction because they were not timely. However, we are here again on an issue that to me is very simple. And to me, there are three issues that they have presented for you to review, and I would like to go through those each individually. The first is this issue of mandate. Did the NNN win back on remand? It took new evidence. And counsel is right. I did argue that, you know, your honor, nobody pled a deviation. I didn't know there was going to be a request for a deviation until closing argument, and my evidence would have been different. And your honor, I would like an opportunity, this is at the trial court level, to present some additional evidence because we didn't understand that there was a request for a deviation and therefore did not present the right amount of evidence. Now, counsel has given you transcripts of that hearing. I would ask you to look at them. We had approximately ten pages on that. Very short testimony. Approximately ten minutes where my client simply went through, these are my children's expenses, and they are significant. Does my client make good money? She does. She does. But the issue of the deviation, I think, needed to be readdressed. So then we're talking about what was the mandate of this court. Did the trial court err by allowing me to put on that additional short amount of evidence? And I would submit they did not. Counsel has gone through what were the findings, what were the findings, what were the findings. I believe that what you should be looking at is what was the mandate of this court. And in fact, in my brief, the additional appendix has the opinion of this court so you can quickly go to it and see what were the rulings at that time. Justice Appleton, you might be a little more familiar with that since you wrote that opinion. However, let's look at exactly what the mandate is. The last paragraph, well, the second to the last paragraph. For the foregoing reasons, we affirm the trial court's judgment in part and reverse in part. And we remand this case for further proceedings. We've reversed the award of the trial court in the amount of 32 percent of respondents' regular net income and we remand this case for a redetermination of trial support. Now, counsel argued at that original appeal for this $900 deviation. And that appeal has happened and I don't want to really re-plow that ground. But at that time, and I ask, we have... You didn't quote the mandate correctly, counsel. I believe I did. For such other proceedings as required by the order of this court, is what the mandate said. My mandate, Your Honor, I apologize. I'm looking at the last... It is the decision of this court that the order on remand for the circuit court be affirmed in part and reversed in part and the cause be remanded to the circuit court of Loveland Judicial Circuit, McLean County for such other proceedings as required by the order of this court. That's the actual mandate of this court. Okay. And I apologize if... Actually, I think that is more supportive, Your Honor. I was reading the second to the last paragraph of the opinion. But honestly, to be brutally honest, Justice Steigman, I think that that is actually more helpful. That what is it that the trial court... What is it that this court told the trial court to do? And the trial court... You had the opportunity to say, sure, keep that $900 forever. And I would ask that you look at that and re-look at that 7 years. And what did it represent? It represented what would have been maintenance. It was negotiated between myself, Mr. Walker, and a mediator, Don Hammer. We thought that, oh, instead of writing a check this way and writing another check this way, we'd do it that way. It seemed really like a good idea at the time. We'll never do that again. But the bottom line is this. That was a 7-year period of a deviation or maintenance or he got a reduction. And I have quoted that language in my brief as well, indicating that that was for a 7-year period and was basically in exchange for him giving up all rights for any claims to maintenance. And so you've already dealt with that issue. But the issue then really becomes did the trial court make any mistake by allowing some additional evidence on this case? And I would submit they did not. Justice Steigman, you have quoted that portion of what the actual remand is, what the instructions were. And I would submit to you that nowhere in those instructions does it say, look, we looked at all this. It really should be $900. Just do that. Nowhere in this trial court's first opinion was there any situation where they say, you know, 16%. 16%? That sounds good. No. They remanded back to the trial court who is the original person who, or the original body that heard the evidence, saw the witnesses, reviewed everything. And I believe that at that time, Justice Appleton, that was the correct thing to do. Then that's what the trial court did. On remand, it looked at everything, considered a small amount of additional evidence, and then made its ruling. So then I think we get to the second part. So we have the first question is did the court in any way make an error on remand in terms of allowing additional evidence? And I submit to you it did not. I submit to you that the trial court completely followed what the mandate of this court was in terms of allowing a small amount of additional evidence or further proceedings, if you will. There was nothing in there that said, listen, we want you to just go on what you have. There was nothing in there that indicated here's the percentage we think you should use. But instead, they gave the trial court that discretion. And I cite in my brief numerous cases that talk about the court using discretion to abide by what they believe the mandate would be, the reasonable following of the mandate. So I think that that is fair. Counsel keeps using this phrase extraordinary circumstances, extraordinary circumstances. And in fact, there is a case that talks on remand about there being a need for extraordinary circumstances. And in my brief, now that is a very unusual case. And in that case, two attorneys or the parties stand up at trial and say this house is worth $175,000. They stipulate for that. Then the trial court, it doesn't explain why, set a value on that house of $225,000. Comes up on appeal, the appellate court, first district, by the way, I believe, says listen, you don't need to do it. They stipulate it to the value. And so then on remand, additional evidence was taken. And then it went back up and the appellate court said look, there needed to be extraordinary circumstances for you to take additional evidence on this issue, and you had a stipulation. So I think in that particular case, was there dicta that talked about extraordinary circumstances? There was. Do I think it's relevant here? I do not. I do think that our trial court did the appropriate thing by allowing a little more evidence. The second issue raised on appeal. I filed my petition trying to get trial support in September of 2012. On appeal, you indicated there needed to be a deviation. It went back down, and guess what the trial court did? It did exactly what you told it to do. It deviated. And it deviated downward from 32% to 25%. I think that is a substantial deviation, and I think it is what the court considered. The trial court went back and looked at everything and considered this evidence. The trial court's ruling in this, by the way, I thought was well-written. I would ask that you review that again in terms of covering everything the trial court considered in setting that deviation. And that deviation is a substantial one when you're talking about three children. In my brief, I've also done a little math for you because there's never been a dispute that the trial support that I calculated at 32%. Everyone agrees that that math is correct. So in my brief, I point out to you that if we're going to go on 25% for three children, those children get around $400 a piece per month. I don't think there's some argument that there's some sort of windfall to my client. I'm sorry, I've raised children. I do not believe $400 a month per child is any sort of windfall. I do not believe that the court erred in any way. I do believe that the court considered all of the evidence in setting child support at a 25% figure instead of a 32% figure. And the court did that from September of 2012 to September of 2015. Yes, did I file an additional, did I file a brand new petition to modify child support in September of 2015? I did. And that's in two-fold. First of all, we'd been fighting in court for three years trying to get the first child support figure set. And in that time, there had been a substantial change in circumstance. And in that substantial change in circumstance, my client did change positions. She was unemployed for a period of time, which was testified to, and she changed her position working now for a different company at a set rate of $250,000 a year. And originally there was some sort of argument that somehow or another my client should have even been making more, as if she was the payor and we needed to be imputing income at her old income. And quite frankly, the trial court discussed that in the transcripts and rejected that and actually said, wait a minute, so now because we're deviating, we have to keep her at her old income. And I want to talk to you about a little bit about why she changed employment. And she testified to that as well. But if you look at what the actual income was, the income even at her old job had changed significantly. Her last income in that job in 2014, which we hadn't talked about, because we were on appeal and no one really knew at the end of the year what her income was going to be in 2014, had dropped substantially to under the $250,000 amount. And in fact, in their brief at one point, they argue, well, if in 2014 she only made $171,000, then in 2015 when she made the quarter of a million dollars, then there's no substantial change in circumstance because she's had an increase. Well, no, because nobody knew about the 2014 income, because we were still arguing over the evidence that was presented for 2012 and 2013. So I guess I just want to diffuse that idea that my client had done something wrong by seeking new employment, when in fact that employment did increase her situation. But it decreased, and it decreased substantially. Now, counsel keeps wanting to say, well, the appellate court found this, and the appellate court found this, and the appellate court found this. And to be honest with you, I'm not arguing with your findings. I think that they actually are very supportive of this third issue, which is that issue of increasing child support after 2015. And there had been a substantial change in circumstance, and that substantial change in circumstance can be taken directly from the original opinion of this court, which indicated that, and I'm quoting here, $322,706 she had made in 2011 by May. So yes, she had made a substantial amount of money in 2011. They also talked about the income in 2012 as being over $279,000. So, as of May of 2012. So in the findings that you have, we know that she made substantial income, and then that income was reduced. Now, counsel says, not once has anyone said these children's needs were unmet. And I would agree, because my client's testimony was, I work this hard for one reason. I work this hard because I want my children to have nice things. So what was her testimony? Her testimony was, guess who's doing without? Mom. Mom is the one who's not putting money in her retirement account. Mom is the one who's cut back on her living so that her children can have this sort of lifestyle. But the bottom line is, if we're looking at Mr. Wells' obligation, I believe Mr. Wells' obligation was appropriately set by the trial court at, I believe it's 28 percent for the time frame after September of 2015, 25 percent from September of 2012 to September of 2015. So the trial court looked at everything and gave a slight increase. Was there a mathematical breakdown? No. Do I think there needs to be a mathematical breakdown when there's a deviation? No, I don't. I think that the trial court looked at how my client's income had substantially changed. And in my brief I said forth, and it was a little confusing even as I reviewed this this week, about looking at gross numbers versus net numbers. And you have to be very, very careful about following the brief of appellant because with regard to what those gross numbers and net numbers are, I've cited on page 20 of my brief his gross income, and she was indicating it was net, but the gross income was $71,804 in 2013. In 2015 his gross income from state farm alone was $81,762. So there was a fairly substantial increase of almost $10,000, $9,958, in just a two-year time frame. That's a 14 percent increase on his gross income. And so in terms of looking at that, there was also some talk in the brief, I wasn't necessarily argued here today, that additional income that he had from dividends should not be considered. We don't believe that to be the law. We've argued that, and in fact, all income from all sources means all income from all sources. So if he has a dividend income, that needed to be considered in terms of totally coming up with what his gross income was, and his gross income in 2015 was $98,502.32. And this is a guy who's paying around $400 a month per child. So I do recognize my client makes a lot of money with his children. And I think that's important not just for my client, but I think it's important for the children. I think it's important for children to know both of our parents are paying an appropriate amount to try to make sure that we have the love and support, as the statute requires, of both parents. And so with regard to this, I would ask that you just simply affirm in trial court. I think it follows the mandate. I think it set child support appropriately at 25% for that three-year period from 2012 to 2015. And I think at 28% at the current amount is also appropriate. It essentially knocks off one of the children under the statutory guidelines. I don't know if that's what the court's thought process was. I would ask that you specifically reject this idea that this $900, which we keep arguing about and keep arguing about, it's done. You've already dealt with that. He doesn't get the $900 reduction anymore. It was a form of maintenance. So that's done. If you go to the 16.5%, I grabbed my calendar and quickly did the math on that, that basically comes out to just under $900 on my math, on the child support that I had calculated. So if you go to 16%, I think that you're just cutting the apple a different way, that you've already said you're not going to cut. So I would ask that you simply affirm the trial court on all three of these arguments that have been made by the appellant. Thank you. Rebuttal. Very briefly, Your Honors. Counsel indicates that there were two appeals where we didn't appear before, Your Honors. That's true. This court found they were premature only because there were some matters occurring at the lower court level. I would indicate to Your Honors that when the remand was issued in this case, Your Honors directed the trial court and other appellate courts direct the trial court to consider your opinion and your full opinion. And the message in the appellate opinion in this case is not what counsel just said, which is the $900 was a form of maintenance. This court clearly rejected that. Mr. Wells received a downward deviation in his child support for five years. Counsel said seven, but actually it was a five year and then out. But this court did not say, going forward, Mr. Wells is never entitled to that type of a deviation. This court recognized that based on the evidence, the trial judge abused his discretion in not giving a downward deviation when he issued his decision in August of 2012. The evidence was in. Counsel says, well, we only spent about ten minutes on that. I would assert to Your Honors that once that door is opened, that a trial court can reopen evidence when a very specific issue is remanded to the trial court, we will encourage and increase the litigious nature of the parties because we are going to have to then re-defend an evidentiary hearing each time an issue is remanded back to the trial court. This is a unique situation because it is a family law case and certainly the trial court always has jurisdiction to reconsider issues going forward. But in this case, the trial judge had all of the tools and information necessary to make a determination on a downward deviation. Petitioner made substantially more income. The children's needs were being met. Mom received two tax exemptions and Mom agreed in 2007 that regardless of what the child expenses were, she was going to do actually what she testified to doing, which is work hard to make sure those expenses are paid. And so, I would assert to Your Honors the trial court had what it needed to make that determination of a downward deviation. I would assert to Your Honors that the 25% did not go far enough and clearly the decision of the trial court in December of 2015 sings accolades of Mom in this instance and essentially says because of the luxuries that she wants to bestow on her children, she now is not meeting her needs. Counsel failed to illuminate or again indicate to this court Mom had now a domestic partner who was paying half of her expenses. That was true in 2012. That this court reviews the evidence of her testimony actually in November of 2015, all of her needs were being met. Even the trial court says, well, it's really a quandary of what is a need and what is a desire. I would assert to Your Honors that in this instance, the petitioner made an employment change. She still makes a substantial income. The needs of the children are being met and while counsel might say $1,200 a month is not a windfall, I would assert to Your Honors that it is and that it is a significant reason for this court to again remand the issue of the downward deviation in this case and also find that the trial court's determination that there was a substantial change of circumstance in 2015 is against the manifest way to the evidence. Thank you, Counsel. We ordinarily ask far more questions, but each of your arguments was sufficiently illuminating and addressed the issues and it was not necessary. Thank you.